209 So.2d 273 (1968)
Clarence McCLENDON and Willie Hart, Appellants,
v.
Albert KEY, Appellee.
No. 1300.
District Court of Appeal of Florida. Fourth District.
April 18, 1968.
*274 W. George Allen, Fort Lauderdale, for appellants.
J. Charles Shores, Jr., of Fischer & Hinckley, Fort Lauderdale, for appellee.
BARNS, PAUL D., Associate Judge.
This is a joint appeal by the plaintiffs from a summary judgment granted in two actions at law on motion of the defendant against each plaintiff-appellant. We find error and reverse as to each.
Appellants' assignment of error argued in that the court erred in granting the defendant's motion for summary judgment.
*275 The McClendon complaint alleged that when the plaintiff was "riding in the automobile with the Defendant as a guest of the Defendant", the defendant "operated and drove the automobile wrongfully, unlawfully, carelessly, recklessly, and with gross negligence in that he operated and drove the automobile" off the highway in the night time and ran it on the earth shoulder to the left of the paved highway and then over the highway on to the right shoulder and into a guard rail while under the influence of intoxicating liquor, thereby injuring the plaintiff.
The foregoing allegations are denied by the defendant's answer, and the defendant further makes the defense that the plaintiff "assumed the risk incident to the trip or transportation, or the plaintiff was otherwise guilty of negligence which * * * contributed to the causing of his alleged injury. * * *"

FACTS
The depositions show that on a Saturday night, before the accident on Sunday morning at about 2:30 A.M., McClendon remembers seeing the defendant at the Palms Bar about 6:00 o'clock P.M., and the defendant Key was there when he returned about 11:00 o'clock P.M.; at about 11:30 James Hart, James Brown, Albert Key and McClendon left the Palms Bar for Opa-Locka, about nine or ten miles away, going first to James Brown's wife's home, then to the Harlem Gardens Bar, the four men and Brown's wife arriving there about midnight. Another half-pint of Old Grand Dad was consumed by the four men at Harlem Gardens Bar, again bought by Brown.
The trip in Key's automobile was initiated under the following circumstances, as testified to by Brown:
[Brown]
"A. Yes. I was in the Palms. And I promised my wife I'd be down to see her and the baby. So I was in there quite some time. And Albert came in and 
"Q. Albert Key?
"A. Right. And I asked him about taking me up there. And he said no. He said, `I don't feel like it.' He said, `I'm sick. I don't feel too good.' So I kept nagging at him. So he said, `No, I don't want to go down there.' So I said, `Come on, man. You can do me this little favor.'
"So I went and bought a half a pint of Grand Dad, and we all started drinking. So Willie [Hart] asked him  he said, `Come on, man, take the boy down there to see his wife.' So after we drank the half a pint, we just left and went on down. I finally talked him into going."
It was at this time that McClendon was invited to make the trip. McClendon testified that he went to the Palms Bar to buy cigarettes.
[McClendon]
"A. No. I just went in and got a pack of cigarettes, and James Hart called me and said, `Come and ride down with us.' And at the time I had about $6.00 in my pocket, and I said, `I don't have too much money in my pocket.' So, he said, `Come on, ride down with us.'
"So, at the time I gave him some money. In fact, I didn't want to go. In fact, I don't know exactly what happened, but he wanted to take James [Brown] around to pick his wife up. So we went down there with him."
Plaintiff-Hart on deposition testified:
"Q. When did you first see Albert Key that night before, that would be Saturday?
[Hart]
"A. That Saturday I saw him in the Palms. And I wanted to go over to Opalocka to see a girl, and another boy named James Brown was going to see  me and him was going to see two girls, but he was married to one of the girls. When we were coming back is when we had the accident.

*276 "See, I had about $150 in my pocket and he didn't have no money, and I paid him out of my pocket to take me over there because he said he didn't have any money.
"* * *
"Q. How did you make these arrangements with him? Did you go over to his table and say, `Would you take me?'
"A. No. After he seen me, we was talking. And after I said I wanted to go  I had no way to go  so he said, `I don't have any money.' So I said, `I'll pay you,' because I had $150 in my pocket. So me and McClendon done chipped in and bought some gas, and we went on over."
The depositions clearly show that the deponents remember little or nothing as to how the accident happened since each deponent was knocked unconscious by reason of the accident.

CONCLUSION
Both the plaintiffs and the defendant moved for a summary judgment. When a party moves for a summary judgment, he concedes that there is no genuine issue as to a material fact that ought to be tried, but such concession is only for the purposes of the motion made by him and does not carry over to be used against the movant to the benefit or advantage of his adversary. John K. Brennan Co. v. Central Bank & Trust Co., Fla.App. 1964, 164 So.2d 525. In passing on a motion for summary judgment it is no part of the court's function to decide issues of fact but solely to determine whether there is a genuine issue of a material fact. All doubts as to the existence of a material fact must be resolved against the party moving for a summary judgment or decree. A motion for summary judgment raises only a question of law, and if there is any question or doubt of a material fact shown, the motion should not be granted. Meadows v. Edwards, Fla. 1955, 82 So.2d 733. To entitle a movant to a summary final decree he must affirmatively show the absence of a genuine issue of any material fact and that he is entitled to a summary decree in his favor under the applicable substantive law. The movant-appellee failed to meet this twofold test.
From the facts it clearly appears that the plaintiffs were passengers in the defendant's automobile. It does not clearly appear that they were "guest" passengers or "non-guest" passengers. The depositions tend to show that they were "non-guest" passengers. If they were not "guest" passengers, then the defendant, under the substantive law, would not have the benefit of the automobile "guest" statute. See F.S. Section 320.59, F.S.A. 1967.[1] If the plaintiffs were "non-guest" passengers, then the defendant operator of the automobile does not have the benefit of the statute, and his liability is measured by his common law duty to use reasonable care not to cause injury to the passengers of the automobile operated by him. The complaint fails to allege that they were passenger-guests of the defendant "without payment for such transportation" and the answer of the defendant fails to plead that the plaintiffs were non-paying guests. See Annotation "Payments or contributions by or on behalf of automobile rider as affecting his status as a guest." 10 A.L.R.2d 1342. The complaints contain only one count, which count alleges gross negligence.
On the hearing of a motion for summary judgment, the court may "pierce the curtain of the paper issues" made by the *277 pleadings and examine the affidavits and depositions for the purpose of determining whether there is any genuine issue of a material fact that ought to be tried. Here it does not appear there is no genuine issue of fact that ought to be tried.
Where on motion for a summary judgment matters presented indicate the unsuccessful party may have a cause of action or defense not pleaded, which would justify an amendment of the pleadings, such amendment should not be prevented by the entry of a final judgment. Curley v. Finest Homes, Inc., Fla.App. 1964, 167 So.2d 739. Under such circumstances summary judgment should be denied and leave to amend should be granted. City of Pinellas Park v. Cross-State Utilities Co., Fla.App. 1965, 176 So.2d 384. See Rossiter v. Vogel, 2 Cir.1943, 134 F.2d 908, 912. 6 Moore's Federal Practice, 2d, § 56.10 (1965).
The record on appeal fails to contain Hart's complaint and Key's answer. This was an error of the circuit court clerk, induced by the failure of the appellants' attorney to designate in chronological order the particular items of the record for the clerk's benefit, as is the proper practice. Such practice reduces size of the record and tends to produce a proper record, which is highly beneficial to the parties as well as the appellate court.
Since both plaintiffs and the defendant are represented by the same attorney, and it is apparent that both claims are based on a state of facts common to both, we have assumed the pleading in the Hart case to be the same in substance as in McClendon's case. If not, this erroneous conclusion may be raised on rehearing. The "Shot-Gun" method of designating the items for the record on appeal for the clerk is disapproved and should not be used.
The judgments appealed from are reversed.
Reversed.
CROSS and REED, JJ., concur.
NOTES
[1] "320.59. Liability to guest or passenger.  No person transported by the owner or operator of a motor vehicle as his guest or passenger, without payment for such transportation, shall have a cause of action for damages against such owner or operator for injury, death or loss, in case of accident, unless such accident shall have been caused by the gross negligence or willful and wanton misconduct of the owner or operator of such motor vehicle, and unless such gross negligence or willful and wanton misconduct was the proximate cause of the injury, death or loss for which the action is brought * * *."