438 So.2d 197 (1983)
Diane M. COUDRY and Thomas Coudry, Her Husband, Appellants,
v.
CITY OF TITUSVILLE, etc., and Insurance Company of North America, Etc., Appellees.
No. 82-886.
District Court of Appeal of Florida, Fifth District.
October 6, 1983.
*198 Michael L. Reda of Cianfrogna, Telfer, Evans & Reda, P.A., Titusville, for appellants.
G.B. McVay Voght of Pitts, Eubanks & Ross, Orlando, for appellees.
COWART, Judge.
This case involves the question of whether under the facts of this case a city can be legally liable for injuries allegedly caused by a dangerous condition created in a city street by an independent contractor while constructing certain improvements under contract with the city and, if so, under what circumstances and what theory can the city be responsible.
In this case the city contracted with an independent contractor to construct certain improvements including surface water drains and sewers. Allegedly the contractor dug a ditch near the edge of a street and piled a mound of dirt in the street and left it without adequate barricades or warnings. Attempting to drive a vehicle between the dirt mound and the edge of the street the plaintiffs' vehicle slid into the ditch, struck a telephone pole and the plaintiff Diane Coudry was injured. The plaintiffs appeal from a summary judgment in favor of the city arguing that a city cannot delegate or relinquish its duty to maintain its streets and to keep them in safe repair. They rely on cases such as Woods v. City of Palatka, 63 So.2d 636 (Fla. 1953), Singleton v. City of Jacksonville, 107 So.2d 47 (Fla. 1st DCA 1958), and Finkelstein v. Brooks Paving Company, 107 So.2d 205 (Fla. 3d DCA 1958), as support for this position.[1]
*199 However, it can be seen from the plaintiff's own pleadings that this case does not involve injuries resulting from a defect in the street and does not involve injuries resulting from a breach of a city's duty to make repairs to its street in order to eliminate an unsafe condition caused by defects in the street. Nor does it involve a case where a city is attempting to avoid its own responsibility for injuries resulting from its failure to repair street defects by trying to place responsibility on a contractor it has hired to correct these same defects for which it is already responsible. Therefore the quoted rule of law and the cases cited in support of it, are inapplicable to this case. Here, the dangerous condition was allegedly affirmatively created by the independent contractor while performing work under a contract with the city. The independent contractor remains a defendant in the pending action. The public street is the mere situs of the dangerous condition allegedly created by the contractor. The situation here is analogous to where a gas company or telephone company or anyone else hires an independent contractor to lay a gas pipe line or a cable or build anything. The gas company, telephone company or other contracting party would not be liable for the negligence of its independent contractor who, in performing its contract, created the exact dangerous condition alleged in this case to have been created by the city's independent contractor. Nor would the city wherein the independent contractor was working, be liable for the negligence of such independent contractor merely because the dangerous condition was created on or in one of its streets. The fact that here the city is both the entity that contracted with the independent contractor to do construction work and was also the governmental owner of the public street does not create a liability that does not follow from either circumstance alone.
While a city is liable for injuries resulting from defects in its streets resulting from its failure to maintain them in accordance with their original design[2] and for its own negligence in failing to eliminate such defects by making repairs (and remains liable for such injuries notwithstanding that faulty maintenance or repair efforts made by the city or its contractor fail to correct such defects) the city is not an insurer against the independent negligent acts of others, including its own independent contractor, merely because their negligence occurs on or in a city street. In our existing society it is absolutely essential that many entities, private, quasi public and public, construct and maintain in, on, under and above streets, roads and highways a vast number of pipes for transmission of drinking water, surface drainage water, waste water, raw sewage, treated sewage effluent, gas, oil and other fluids and cables for electricity and telephone and other power and communication transmission systems. The mere fact that a city or other governmental entity owning the street or road gives permission for normal construction activities to occur should not be held to thereby place a duty on the city to constantly supervise all activity of others in order to prevent, or warn the traveling public of, all danger resulting from such construction activity. The liability of the contractor should be enough. Otherwise the city is, effectively, being made a surety or insurer of safety as to all construction work in, along or across all of its streets. Rather than assume such responsibility and liability the city would naturally and normally just deny permission for such work or impose oppressive and suppressive conditions on contractors contrary to the interests of the public in having the construction work performed. Alleging first that it was the city's agents that created the alleged dangerous and unsafe condition the plaintiffs in paragraph 12 of their second amended complaint also alleged generally that the city "had a duty to warn members of the public of potentially dangerous and unsafe conditions on its streets or rights of way contiguous to the streets involved." We do not necessarily agree that the city had such a broad duty unqualified as to whether or *200 not the city knew of the alleged dangerous condition. Assuming, however, that a city has a duty to warn motorists of known dangerous conditions created by the negligence of third parties in the area of a public street, surely a general warning, such as "This city warns motorists that city streets are potentially dangerous and unsafe" would be totally inadequate.
The shopkeeper or storeowner has a duty to periodically survey the limited area of his business premises to ascertain that they remain safe for business invitees if it is foreseeable that a dangerous condition may have been caused by third parties such as other business invitees. By analogy does a city owe a comparable duty to make itself aware of, and to eliminate or warn of, all dangerous conditions created by third parties on all city streets? If a city is to be held to such a duty, it would likewise be entitled to a reasonable time to take action to learn of dangerous conditions and to either abate them or warn or otherwise protect motorists from them. In this particular the summary judgment is correct because the second amended complaint fails to allege that the dangerous condition was known to the defendant city or had existed for a sufficient length of time so that the defendant city should have known of it, assuming, without here deciding, that it had a duty to learn.
While a city cannot, by delegating its duties to maintain and repair to an independent contractor, exonerate or insulate itself from responsibility for injuries caused by defects in streets for which it is liable, nevertheless, the same as anyone else the city can hire independent contractors to do work, whether to make street repairs, or, as here, other improvements and, thereby, avoid liability for injuries caused by the contractor's negligence while performing the contracted work. Sovereign immunity may sometimes protect a governmental agency from liability where a private entity would have no such protection or immunity but the absence or waiver of sovereign immunity does not mean that the governmental agency has more duty, responsibility or liability than would a private entity under the same circumstances. The doctrine of non-liability of one who hires an independent contractor applies to a governmental agency the same as to a private entity. As a matter of law on the facts before the trial judge on the motion for summary judgment the persons allegedly creating the unsafe condition causing plaintiff's injuries were agents of the city's independent contractor and not agents of the city for whose negligence the city is legally liable. The fact that the city in this case had an employee whose duty it was to inspect the work of the independent contractor to see that the city got the performance that the city was entitled to receive under its contract is exactly analogous to the position of Sears, Roebuck and Company in Van Ness v. Independent Const. Co., 392 So.2d 1017 (Fla. 5th DCA 1981), pet. den. 402 So.2d 614 (Fla. 1981). Here, as in Van Ness, the mere right of an owner (the city here) to inspect to determine that the work conforms to the contract did not change the owner (the city here) from a passive non-participant to an active participant in the construction with that right of supervision over, or direction of, the manner in which the work is performed that destroys the independent status of the contractor and renders the owner liable for negligence occurring in the performance of contracted work. Van Ness is in point and here the summary judgment in favor of the city is correct as was the summary judgment in favor of the owner (Sears) who contracted with an independent contractor in Van Ness.
The cause of action which the plaintiffs have attempted to plead against the defendant-city appears to have two theoretical bases, viz: (1) that the alleged dangerous condition in the public street was a defect that resulted from the city's duty to maintain the street which duty is of a type not delegable to an independent contractor, and (2) that the contractor's agents that allegedly created the alleged dangerous condition were agents of the city because the city had exercised such a degree of supervision, direction and control over the *201 contracted work that its contractor did not have the status of an independent contractor. We hold that the summary judgment was correct as against these theories on the uncontested facts before the trial judge. Because the plaintiffs were attempting to assert that the city was directly liable for the creation of the alleged dangerous condition apparently the plaintiffs did not attempt to allege a cause of action against the city on the theory that although the city did not itself create the dangerous condition and although it was created by an independent contractor for whose acts the defendant city was not directly liable, nevertheless, "the dangerous condition was known to the defendant-city or had existed for sufficient length of time so that the defendant-city should have known of it."[3]
Since the case of Hart Properties, Inc. v. Slack, 159 So.2d 236 (Fla. 1963), it has been often recognized that although a summary judgment should not be refused because of facts showing an issue not framed by the pleadings and although a summary judgment may have been properly granted on the issues that were framed by the pleadings, nevertheless, when the facts submitted to the court in connection with a motion for a summary judgment show that the unsuccessful party may have a cause of action not pleaded, or a better one than pleaded, it is proper procedure to enter summary judgment with leave to amend. Because a summary judgment is usually, as here, a final judgment this leave to amend after final judgment has been considered an anomaly by many but the practice is now well established.[4] Therefore, we affirm the summary judgment but remand with directions that the trial court permit the plaintiffs, within a reasonable time, to file such amendments to their complaint relating to the city as the plaintiffs may be advised.[5]
AFFIRMED AND REMANDED with directions.
ORFINGER, C.J., concurs.
DAUKSCH, J., dissents without opinion.
NOTES
[1] Woods v. City of Palatka, 63 So.2d 636 (Fla. 1953), was a case where Woods sued the city for injuries sustained when she fell into a hole in the city sidewalk which injuries and hole resulted from the city's neglect of its duty to maintain its sidewalk in a safe condition. The city pleaded in bar a special act it had caused to be passed which simply declared that the city was not liable for personal injuries due to defects in its sidewalks. The court held the statute unconstitutional. Singleton v. City of Jacksonville, 107 So.2d 47 (Fla. 1st DCA 1958), is another case where the plaintiff alleged she was injured by reason of the failure of the city to maintain a certain sidewalk and guardrail on a viaduct. There was little, if any, actual proof that the city had built the viaduct and the city contended that it was the duty of abutting owners to maintain the sidewalks along the viaduct. The appellate court held the trial court erred in directing a verdict for the city stating the usual rule that the duty to repair and maintain city streets and sidewalks rests upon the city. Finkelstein v. Brooks Paving Company, 107 So.2d 205 (Fla. 3d DCA 1958), is closer to the facts in this case. There a motorist sued the city and its contractor who was engaged in repairing a street by resurfacing it when the plaintiff, operating a vehicle, observed an elevated manhole and, thinking he could drive over it safely, tried it and was injured when he failed. The appellate court upheld a summary judgment entered against the plaintiff and in favor of both the city and its contractor based on the plaintiff's contributory negligence established as a matter of law. While the court in Finkelstein states nothing inconsistent with the analysis in this opinion, as a technical matter all that is said in Finkelstein about the city's duty and the contractor's duty is dicta because the case was decided on the application of the contributory negligence doctrine as a complete bar and of a determination, as a matter of law, of negligence on the part of the plaintiff.
[2] See Perez v. Department of Transportation, 435 So.2d 830 (Fla. 1983).
[3] This language is taken by analogy and adapted from paragraph 5 of the Fall-Down Negligence Complaint, Form 1.951, Forms for use with the Rules of Civil Procedure, approved by the Supreme Court, 265 So.2d 21 at 42.
[4] See Purinson v. Antenna Specialists Co., 408 So.2d 617 (Fla. 3d DCA 1981), pet. den. 418 So.2d 1278 (Fla. 1982); First Nat. Bank of Tampa v. Pappas, 372 So.2d 989 (Fla. 2d DCA 1979); Dorset House Ass'n, Inc. v. Dorset, Inc., 371 So.2d 541 (Fla. 3d DCA 1979); Firestone Tire & Rubber Co. v. Thompson Aircraft Tire Corp., 353 So.2d 137 (Fla. 3d DCA 1977), appeal after remand 382 So.2d 878 (Fla. 3d DCA 1980); Schurkman v. Stolar, 347 So.2d 653 (Fla. 3d DCA 1977); Forte v. Tripp & Skrip, 339 So.2d 698 (Fla. 3d DCA 1976); Keyes Co. v. Executive Center, Inc., 311 So.2d 734 (Fla. 3d DCA 1975); Watier v. REW Crane Service, Inc., 240 So.2d 177 (Fla. 4th DCA 1970), amended in other respects, 257 So.2d 249 (Fla. 1971); McClendon v. Key, 209 So.2d 273 (Fla. 4th DCA 1968).
[5] See Forte v. Tripp & Skrip, 339 So.2d 698 (Fla. 3d DCA 1976); Florida Air Conditioners, Inc. v. Colonial Supply Co., 390 So.2d 174 (Fla. 5th DCA 1980).