515 So.2d 1331 (1987)
E.J. STRICKLAND CONSTRUCTION, INC., Appellant,
v.
DEPARTMENT OF AGRICULTURE AND CONSUMER SERVICES OF FLORIDA, et al., Appellees.
No. 86-1089.
District Court of Appeal of Florida, Fifth District.
November 19, 1987.
*1332 Roger A. Kelly of Foster & Kelly, Orlando, for appellant.
Martin B. Unger and Jerri L. Solomon, of Taraska, Grower & Unger, P.A., Orlando, for appellee, Department of Agriculture and Consumer Services.
Michael B. Wingo of Pitts, Eubanks, Hilyard, Rumbley & Meier, P.A., Orlando, for appellee, Lawson L. Lamar.
ORFINGER, Judge.
E.J. Strickland Construction, Inc. (Strickland) appeals a summary final judgment in favor of the defendants below. The issue on appeal is whether the trial court correctly held that Strickland's claim for negligent damages to and conversion of its tractor was barred by the doctrine of sovereign immunity. We conclude that there was no bar, and reverse.
The record, viewed in the light most favorable to the non-moving party, O'Connell v. Walt Disney World, 413 So.2d 444 (Fla. 5th DCA 1982), reveals that Strickland owned a D-6 Caterpillar tractor which was parked on his private property for a period of time beginning in January of 1982. The tractor remained unused during an extended period of time because Mr. Strickland, the president of plaintiff corporation, was injured and was unable to operate it. During this time vandals had removed the oil filler pipe and had filled it with sand. Mr. Strickland was concerned that moving the tractor might cause damage to the internal components due to the presence of the sand, so he was waiting to recover from his injuries in order to be present when the tractor was moved from the property.
In October of 1984, the Department of Agriculture (Department) in conjunction with the Department of Transportation, Department of Law Enforcement, the State Attorney's Offices and Sheriffs of 15 counties, were investigating a heavy farm equipment theft ring. The ringleader had recently been arrested and individuals who had received stolen equipment or were otherwise involved in the theft ring were abandoning the equipment throughout the state. The Orange County Sheriff's Department was assisting the Department in the investigation and had already recovered numerous items known to be stolen. On October 2, 1984, in the early hours of the day, Detective Jim Bryan of the Sheriff's Department noticed the tractor in question in an open field within the confines of Orange County. The detective described the tractor as located in a "marshy lake area," *1333 partially submerged in water. This led him to believe that the tractor may have been stolen, and abandoned by those involved with the theft ring. This tractor was not included on any list of stolen property, was not known to be stolen, and there was no reason to believe that it was stolen property except for the fact that it appeared to the officer to be abandoned.
In an effort to determine the ownership of the tractor, the detective spoke with a neighbor who lived adjacent to the property on which it was located. Although there is a factual dispute as to what the neighbor told Detective Bryan, viewed in the light most favorable to Strickland, her deposition indicates that she told two men from the Sheriff's Department that Strickland owned the tractor and the property; that Strickland lived about a mile away but that she did not know the actual address. She stated that her husband would be home later in the day and would have additional information concerning the ownership of the tractor.[1] The officers did not wait for the husband to come home, but ordered the tractor towed. When Mr. Strickland learned that the Sheriff's Department had removed his tractor, he contacted Officer Maynard of the Department, who agreed to return the tractor and pay all storage and towing charges. Strickland however was concerned that the tractor might have been damaged during the removal and towing, and did not want the tractor moved again until it could be repaired. Strickland insisted that his private mechanic perform the necessary repairs but Agent Maynard stated that he could only authorize repair work by state mechanics. This point remained in dispute, and eventually, the storage yard sold the tractor to pay for the storage fees that had accumulated during the negotiations between Strickland and Agent Maynard.
Strickland then filed a two-count complaint naming as defendants Lawson Lamar as Sheriff of Orange County and the Department of Agriculture. Count I alleged that the defendants had a duty to Strickland to determine the ownership of the bulldozer before removing it and to exercise reasonable care to prevent damage to the tractor during its removal, and that these duties had been breached. Count II alleged that the defendants converted the tractor and had refused to return it after demand. The defendants filed answers denying the allegations and raised as an affirmative defense that Strickland's claims were barred by the doctrine of sovereign immunity. The defendants then moved for summary judgment. The court granted summary judgment, specifically finding that the defendants were immune from liability for their acts in towing and removing Strickland's tractor.
The analysis of sovereign immunity cases begins with determining whether there is an underlying common law or statutory duty of care with respect to the alleged negligent conduct. Trianon Park Condominium v. City of Hialeah, 468 So.2d 912, 917 (Fla. 1985); Alderman v. Lamar, 493 So.2d 495 (Fla. 5th DCA 1986), review denied, 503 So.2d 326 (Fla. 1987). As the supreme court stated in Trianon, the waiver of sovereign immunity provided by section 768.28, Florida Statutes, "did not establish any new duty of care for governmental entities." Trianon, 468 So.2d at 917. Furthermore, if the act is inherently governmental, there can be no duty owed to individual citizens. Trianon, 468 So.2d at 919-20.
Although negligent investigation of the ownership of the tractor does not give rise to a cause of action, City of Orlando v. Ralph Kazarian, 481 So.2d 506 (Fla. 5th DCA 1985), review denied, 491 So.2d 279 (Fla. 1986), it was also alleged that the defendants were negligent in towing and removing the tractor. In Trianon, the court held that law enforcement officers are immune from actions which are inherently *1334 governmental, but the opinion distinguished these acts from acts for which private persons may be held liable:
The lack of a common law duty for exercising a discretionary police power function must, however, be distinguished from existing common law duties of care applicable to the same officials or employees in the operation of motor vehicles or the handling of fire arms during the course of their employment to enforce compliance with the law. In these latter circumstances there always has been a common law duty of care and the waiver of sovereign immunity now allows actions against all governmental entities for violations of those duties of care. See, e.g., Crawford v. Dept. of Military Affairs, 412 So.2d 449 (Fla. 5th DCA), review denied, 419 So.2d 1196 (Fla. 1982) (negligent operation of vehicle).
468 So.2d at 920. Thus, for example in Rhodes v. Lamar, 490 So.2d 1061 (Fla. 5th DCA 1986), we noted that a police officer is liable for the negligent operation of his vehicle during a high speed chase, even though the decision to initiate and continue the chase was protected as a discretionary, judgmental activity. This reasoning is applicable here. Negligence in the towing of an automobile is the type of activity for which a private person may be held liable. These acts did not involve an inherent aspect of governing for which the defendants were responsible as law enforcement officers. Similarly, the manner in which the tractor was to be towed did not involve the exercise of discretionary judgmental power vested in the defendants by virtue of their status as officers of the State. The supreme court has most recently reaffirmed the principle that sovereign immunity extends only to planning-level decisions and not to operational-level activities. Palm Beach Board of County Commissioners v. Salas, 511 So.2d 544 (Fla. 1987). Thus, having made the decision to tow the tractor, the defendants were required to exercise due care in performing this activity and are liable if their negligence in towing the tractor caused it to be damaged. See also State, Dept. of Highway Safety and Motor Vehicles v. Kropff, 491 So.2d 1252 (Fla. 3d DCA 1986) (officer directing traffic at scene of accident liable for failure to exercise due care). Cf. Eder v. Dept. of Highway Safety and Motor Vehicles, 463 So.2d 443 (Fla. 4th DCA 1985) (officer is immune from suit for decision to issue traffic citations, instead of directing traffic at intersection where traffic light malfunctioned).
The defendants nevertheless argue that the towing was performed entirely by an independent contractor and thus, they are not liable for any damages caused by the negligent towing of a tractor. We find however that the defendants failed to meet their initial burden of showing that the towing service was an independent contractor. While appellees argue that they exercised no control over the operation, there is no evidence in the record which would show that the defendants did not have the right to control the actions of the towing service. Under Florida law, it is the employer's right of control, not actual control, that is determinative of whether he has hired an employee or an independent contractor. See, e.g., Cantor v. Cochran, 184 So.2d 173 (Fla. 1966); National Surety Corporation v. Windham, 74 So.2d 549 (Fla. 1954). Thus a summary judgment on this issue was error.
Strickland has argued that even if the towing was performed by independent contractors, the defendants' duty to use due care in removing the tractor was a nondelegable duty, and thus the defendants could not escape liability by hiring an independent contractor to perform these acts. Generally, a nondelegable duty may be imposed by statute,[2] contract[3] or common *1335 law.[4],[5] Strickland argues that the defendants could not delegate their duty because it is an inherent aspect of the police power. However, there is no statutory, contractual or common law prohibition against delegating this responsibility to an independent contractor, nor is the act of removing the tractor on a lowboy inherently dangerous. In Coudry v. City of Titusville, 438 So.2d 197 (Fla. 5th DCA 1983), this court stated:
While a city cannot, by delegating its duties to maintain and repair to an independent contractor, exonerate or insulate itself from responsibility for injuries caused by defects in streets for which it is liable, nevertheless, the same as anyone else the city can hire independent contractors to do work, whether to make street repairs, or, as here, other improvements and, thereby, avoid liability for injuries caused by the contractor's negligence while performing the contracted work.
Sovereign immunity may sometimes protect a governmental agency from liability where a private entity would have no such protection or immunity but the absence or waiver of sovereign immunity does not mean that the governmental agency has more duty, responsibility or liability than would a private entity under the same circumstances. The doctrine of nonliability of one who hires an independent contractor applies to a governmental agency the same as to a private entity. [Emphasis added].
438 So.2d at 200. Thus, if the defendants are successful in proving that the towing was performed by independent contractors, without interference by or control of defendants, they are not liable for any damage caused to the tractor as a result of the independent contractor's negligence. Coudry, supra; Van Ness v. Independent Construction Co., 392 So.2d 1017 (Fla. 5th DCA), review denied, 402 So.2d 614 (Fla. 1981).
Strickland has also alleged that the defendants are liable for converting his tractor. A conversion consists of an act in derogation of the plaintiff's possessory rights, and any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite time, is a conversion, for which there has always been a remedy. Star Fruit Co. v. Eagle Lake Growers, 160 Fla. 130, 33 So.2d 858 (1948). We agree with the Third District Court that law enforcement officers may be liable for conversion based on their wrongful seizure of an individual's personal property. See Springer v. Florida Department of Natural Resources, 485 So.2d 15 (Fla. 3d DCA), review denied, 492 So.2d 1331 (Fla. 1986). Thus, following the analysis provided by the supreme court in Trianon, it is clear that the defendants would be liable for a conversion of Strickland's tractor.
The defendants argue that they cannot be liable for conversion because their decision to tow the tractor is protected as a discretionary, judgmental act, inherent in their power to enforce the law and seize stolen property. They rely on Everton v. Willard, 468 So.2d 936 (Fla. 1985), in which the Supreme Court held that a police officer is not liable for his decision not to make an arrest. However, that case does not apply where the officer decides to make an arrest, but is without legal authority to do so. Here, the defendants' alleged wrongful seizure is analogous to an officer's wrongful arrest of a person without probable cause. At common law, neither judicial *1336 officers nor police officers have an absolute and unqualified immunity from liability for false arrest. Farish v. Smoot, 58 So.2d 534 (Fla. 1952); Boca Raton v. Coughlin, 299 So.2d 105 (Fla. 4th DCA 1974). Absent the bar of sovereign immunity, the governmental entity employing the officer is also liable under the doctrine of respondeat superior. See Hargrove v. Town of Cocoa Beach, 96 So.2d 130 (Fla. 1957). Thus, we find nothing in prior case law that leads us to believe that a governmental agency may seize an individual's personal property with impunity. We hold that a suit for conversion to recover for the loss of possession of the personal property is an appropriate remedy for the aggrieved party. The trial court erred in holding that the defendants were immune from suit on this basis.
The defendants also argue that even without the protection of sovereign immunity that there were no genuine issues of material fact and that as a matter of law they were entitled to judgment on the count for conversion. The defendants rely on section 265, Restatement (Second) of Torts, which states:
§ 265. Duty or Authority Based Upon Public Interest.
One is privileged to commit an act which would otherwise be a trespass to a chattel or a conversion if he is acting in discharge of a duty or authority created by law to preserve the public safety, health, peace, or other public interest, and his act is reasonably necessary to the performance of his duty or the exercise of his authority.
The defendants note that the essential element in a claim for conversion is "an unauthorized act which deprives another of his property." Aubin v. H. Hentz & Co., 303 F. Supp. 1119, 1121 (S.D.Fla. 1969). (Emphasis added.) The defendants argue that because they had legal authority to seize stolen property that they could not have been guilty of a conversion. However, there are numerous factual conflicts concerning the circumstances under which the tractor was seized. Viewed in a light most favorable to the plaintiff, there is evidence to suggest that the officers had no reason to believe that this tractor was stolen, that they were told by the neighbor that Strickland owned the tractor as well as the property on which it was found, that they disregarded this information and proceeded to seize the tractor. Thus, the question of whether the seizure could be considered to be "authorized" is one of fact, to be determined at trial.
Finally, we reject the defendants' argument that section 768.28(9), Florida Statutes, entitled them to immunity for any conversion committed by its employees. That section of the statute protects the state or its subdivisions from liability in tort for the acts or omissions of an employee or agent committed while acting outside the scope of their employment, or committed in bad faith and with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, safety or property. Liability for conversion does not require proof of knowledge or intent to wrongfully deprive one of his property. Stearns v. Landmark First National Bank, 498 So.2d 1001 (Fla. 4th DCA 1986); Eagle v. Benefield-Chappell, Inc., 476 So.2d 716 (Fla. 4th DCA 1985). Strickland did not allege that the employees of the defendants acted in such manner, nor is there anything in the record to indicate such behavior. We also reject the defendants' argument that merely by committing the act of conversion, the officers of the Department and the Sheriff's Department acted outside of the scope of their employment. See Hennagan v. Dept. of Highway Safety and Motor Vehicles, 467 So.2d 748 (Fla. 1st DCA 1985). (A police officer's conduct may be within the scope of employment, even if it is unauthorized). Accord Richardson v. City of Pompano Beach, 511 So.2d 1121 (Fla. 4th DCA 1987).
For the above-stated reasons, we reverse the summary judgment entered by the trial court below and remand this case for further proceedings consistent with this opinion.
REVERSED and REMANDED.
SHARP and COWART, JJ., concur.
NOTES
[1] The neighbor also testified that when the detective spoke with her, she saw towing equipment in front of the tractor, thus indicating that the decision to tow had already been made.
[2] Newsome v. Dept. of Corrections, 435 So.2d 887 (Fla. 1st DCA 1983).
[3] City of Coral Gables v. Prats, 502 So.2d 969 (Fla. 3d DCA 1987).
[4] Spaulding v. City of Melbourne, 473 So.2d 226 (Fla. 5th DCA 1985) (keeping sidewalk in good repair); Atlantic Coast Development Corp. v. Napoleon Steel Contractors, Inc., 385 So.2d 676 (Fla. 3d DCA 1980) (operation of an inherently dangerous device).
[5] In commenting on the doctrine of nondelegable duties, Prosser has observed:

It is difficult to suggest any criterion by which the nondelegable character of such duties may be determined, other than the conclusion of the courts that the responsibility is so important to the community that the employer should not be permitted to transfer it to another.
Prosser and Keaton, Torts 512 (5th ed. 1984).