AUDREY SCHOENBECK, Indiv. and as Special Adm'r of the Estate of Herman Schoenbeck, Deceased, Plaintiff-Appellant, v. THE DU PAGE WATER COMMISSION *et al.*, Defendants-Appellees.

Second District   No. 2—91—1091

Opinion filed January 29, 1993.

James E. Pancratz, of James E. Pancratz, Ltd., and Cooney & Conway, both of Chicago, for appellant.

James S. Jendryk, Michael Resis, and Ellen S. Martin, all of Querrey & Harrow, Ltd., of Chicago, for appellee Du Page Water Commission.

JUSTICE BOWMAN delivered the opinion of the court:

Plaintiff, Audrey Schoenbeck, individually and as special administrator of the estate of her husband, Herman Schoenbeck, appeals from an order of the circuit court of Du Page County granting the motion for summary judgment of defendant, the Du Page Water Commission (Commission). Plaintiff brought this wrongful death action after Herman died from injuries received in an explosion at a work site. On appeal plaintiff contends the trial court erred in determining that defendant owed no duty to her husband. We affirm.

In December 1983 the Commission contracted with the City of Chicago to purchase Lake Michigan water sufficient to meet the water supply needs of the Commission and its customers. In 1986 the Commission entered into a contract with, among other municipalities, the City of Naperville. The Commission agreed to sell, and Naperville agreed to buy, lake water. Like all the municipalities involved in the contract, Naperville had its own waterworks, or "unit system." The Commission's system for transmitting water from Chicago's water supply to Commission customers was differentiated by designating it as the "waterworks system." The contract called for Naperville to construct, operate, and maintain an underground pressure adjusting station at each point where water was delivered from the Commission's waterworks system into Naperville's own unit system.

On March 14, 1990, an explosion occurred at the site of construction of one of Naperville's pressure adjusting stations. Herman Schoenbeck, a construction laborer, suffered serious injuries in the blast and later died. In her complaint plaintiff alleged that the Commission owned, constructed, maintained, and controlled the underground vault where the explosion occurred and that the negligent conduct of the Commission resulted in her husband's death.

The Commission moved for summary judgment essentially on the basis that it had no responsibility for, or control over, the construction of the pressure adjusting station and, thus, owed no duty to the plaintiff's decedent. The motion was supported by the affidavit of Arthur Malm, the manager of facilities construction for the Commission. Plaintiff's memo in opposition to the motion was supported by the discovery deposition of Mr. Malm, a copy of the contract between the Commission and Naperville, correspondence from Malm regarding Naperville's pressure adjusting stations, and relevant contract documents and specifications. Following oral argument the trial court granted the Commission's motion. Since there were other defendants named in the suit, the trial court made the findings required by Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)), and plaintiff timely filed this appeal.

Summary judgment is a drastic remedy which should be granted only when the right of the moving party to relief is free from doubt. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240; *Lang v. Consumers Insurance Service, Inc.* (1991), 222 Ill. App. 3d 226, 239.) A motion for summary judgment should be granted when the pleadings, depositions, and affidavits reveal that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c); *Wojdyla v. City of Park Ridge* (1992), 148 Ill. 2d 417, 420-21; *Lang v. Consumers Insurance Service, Inc.* (1991), 222 Ill. App. 3d 226, 239.) After reviewing the record concerning this motion we are of the opinion the order granting summary judgment was proper.

Defendant's motion was made in the context of a wrongful death action. In an action for negligence the plaintiff must set out sufficient facts to establish that the defendant owed a duty to the plaintiff, that defendant breached that duty, and that the breach proximately caused injury to plaintiff. (*Wojdyla*, 148 Ill. 2d at 421; *Vesey v. Chicago Housing Authority* (1991), 145 Ill. 2d 404, 411.) Defendant claims it owed no duty to Herman Schoenbeck. The existence of a duty of care must be determined by the court as a matter of law (*Wojdyla*, 148 Ill. 2d at 421; *Eddings v. Dundee Township Highway Com-*

*missioner* (1985), 135 Ill. App. 3d 190, 197), and, absent a showing from which the court can infer the existence of a duty, no recovery by plaintiff is possible as a matter of law and summary judgment in favor of the defendant is proper. (*Vesey*, 145 Ill. 2d at 411; *Rowe v. State Bank of Lombard* (1988), 125 Ill. 2d 203, 215.) In our opinion, plaintiff did not make the showing necessary to withstand a motion for summary judgment.

Plaintiff characterizes Naperville as an independent contractor, building the pressure adjusting station for the Commission under the authority of the Commission's charter. She posits that, as a chartered public corporation, the Commission had an affirmative, nondelegable duty to take precautions against accidents at the construction site. Plaintiff cites *North Chicago Street R.R. Co. v. Dudgeon* (1900), 184 Ill. 477, *Chicago Economic Fuel Gas Co. v. Myers* (1897), 168 Ill. 139, *Graves v. North Shore Gas Co.* (1981), 98 Ill. App. 3d 964, and *Reith v. General Telephone Co.* (1974), 22 Ill. App. 3d 337, in support of this proposition. Each of these cases involved a publicly chartered corporation which contracted for work to be done by an alleged independent contractor. The corporations subsequently disclaimed liability for injury to plaintiff at the work site, claiming they had no control over the independent contractor. The courts held essentially that a corporation engaged in an activity which is dangerous to others, under a State charter or similar license, may not evade liability for negligence by delegating work to an independent contractor.

Plaintiff correctly states the rule found in the authorities she cites. The problem is she does not show that Naperville was an independent contractor or that the work involved here was authorized pursuant to the Commission's charter authority. The controlling statutes and the contract between the Commission and Naperville reflect that the station was built by Naperville, as part of Naperville's own water system, and under Naperville's charter authority.

Plaintiff does not dispute that the Commission and Naperville each had their own, separate waterworks. However, although she nowhere directly confronts the question, we detect a recurring implication in her arguments that the pressure adjusting station may have, in fact, been part of the Commission's waterworks system. This implication is unfounded.

The contract between the Commission and Naperville indicates that the station, when built, would be an integral part of Naperville's municipal water system. The contract states in relevant part:

> "The points of delivery shall be defined as the points of outlet where the Lake Water delivered hereunder leaves the Water-

works System and enters a Unit System. These points will be ten feet downstream from the Commission's metering stations. *** Each Charter Customer shall receive its supply of Lake Water downstream of the Commission's metering stations at pressures that will vary from time to time. Each point of delivery shall have a pressure increasing/reducing station. Each Charter Customer is responsible for the siting, design, construction, operation, maintenance and replacement of the pressure increasing/reducing stations to convey water from the Waterworks System into the Unit System."

Further, according to the contract, each charter customer's operation of *"its* pressure increasing/reducing stations" (emphasis added) may not cause backflow into the Commission's system, nor may operation of "the Customer's" pressure adjusting facilities cause a drop in pressure in the Commission's system. Not only does the contract put the responsibility for building and operating the pressure adjusting facility squarely on Naperville, but it also indicates that Naperville will "receive" its water at varying pressures. Once received, it is up to the customer to increase or reduce the pressure, as needed. According to the parties' contract, the pressure adjusting station was a functional and essential segment of Naperville's unit system.

While we conclude that the station was part of Naperville's water system, plaintiff's contention that it was authorized by the Commission remains. However, the Commission's contract with Naperville nowhere indicates that Naperville was building the station for the Commission, or at the Commission's request, or that the Commission authorized Naperville to build it. Rather, among many other agreements, Naperville agreed to be "responsible for the siting, design, construction, operation, maintenance and replacement" of the station. Thus, it appears Naperville simply took on the job of building the station as one of its obligations under the contract to buy water from the Commission.

We observe in this regard that the Commission did not need the pressure adjusting station in its waterworks system. The purchase of Lake Michigan water by the municipalities was optional. (See Ill. Rev. Stat. 1989, ch. 24, par. 11—135—1.) Had Naperville opted not to buy water, the Commission would not have run its system up to the delivery points into Naperville. The absence of Naperville as a customer would not have affected the integrity of the Commission's system, however. The Commission would have delivered the water to its remaining customers, with or without Naperville. In contrast, Naperville needed the station in order to receive Lake Michigan water

safely into its own system. While not necessary to the Commission's waterworks, the station was an integral and essential part of Naperville's unit system.

Plaintiff focuses heavily on language in the contract which provides that the Commission is obligated to reimburse Naperville for reasonable costs of design and initial construction of the pressure adjusting station. She maintains that this provision shows that the station was part of the Commission's water delivery network and, therefore, was being constructed under the Commission's charter. However, although it is not addressed by the parties, we take judicial notice that the Code authorizes the Commission to contract to reimburse a municipality when the municipality has paid or obligated itself for the development or the construction related to a Commission project. (See Ill. Rev. Stat. 1989, ch. 24, par. 11—135—1.) The statute does not imply that, as a result of reimbursement, the Commission will acquire control over a facility which is part of a municipal water system. Rather, reimbursement appears to be part of a statutory scheme to allow the municipalities, which gave rise to the Commission in the first place, to recapture some of their own costs. (See Ill. Rev. Stat. 1989, ch. 24, par. 11—135—1 *et seq.*) Too, as we have said, there is nothing in the contract to indicate that Naperville was acting as a contractor for the Commission. To the contrary, Naperville was constructing a facility for its unit system. We note in this regard that the contract called for Naperville to provide a site for the pressure adjusting station without reimbursement. In sum, the reimbursement provision does not reflect that Naperville was building the station under the authority of the Commission's charter or that the Commission enjoyed control over construction of the station.

Moreover, Naperville did not need authority from the Commission to move ahead with the construction project; it had its own authority. Section 11—130—1 of the Illinois Municipal Code (Code) states: "Any municipality may *** construct waterworks or construct improvements to its waterworks." (Ill. Rev. Stat. 1989, ch. 24, par. 11—130—1.) The statute defines the term "waterworks" to mean and include "a waterworks system in its entirety or any integral part thereof, including mains, hydrants, meters, valves, standpipes, storage tanks, pumping tanks, intakes, wells, impounding reservoirs, or purification plants." (Ill. Rev. Stat. 1989, ch. 24, par. 11—130—2.) Since the pressure adjusting station was essential to receiving Lake Michigan water into the existing municipal system, its construction was authorized by the statutory language. Naperville neither needed nor sought any authority from the Commission to build the station.

■■■ Our supreme court long ago stated that an alleged independent contractor will be regarded as an agent of the corporation for whom he is doing the work if, with the corporation's assent, he is exercising a chartered power of the corporation "which he could not have exercised independently of the charter of such corporation." (*Chicago Economic Fuel Gas Co.*, 168 Ill. at 146-47.) Here, Naperville properly exercised its own charter authority to construct its own pressure adjusting station. Consequently, Naperville was not an agent of the Commission, and the Commission did not have a duty as to the safety of the construction site.

■■ Plaintiff next contends that the Commission had a duty as a result of its involvement in construction of the pressure adjusting station. For this proposition she invokes section 414 of the Restatement (Second) of Torts, which provides:

"One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care." Restatement (Second) of Torts, §414 (1965).

Plaintiff urges that the Commission retained control of the construction site, relying first of all on the contract, which states in pertinent part:

"Initial construction and future modification of plans and specifications of the pressure increasing/reducing stations shall be submitted to the Commission for review and approval, which shall not be unreasonably withheld."

She relies also on a letter from Arthur Malm to Naperville in which Malm indicated that the Commission reserved the right to inspect the pressure adjusting station to ensure it had been constructed in accord with the approved plans and specifications. The letter also provided for approval of change orders. We do not think the evidence cited by plaintiff, even collectively, demonstrates the level of control which warrants imposition of a duty upon the Commission.

Comment *c* to section 414 of the Restatement addresses the degree of control an employer must retain before he incurs liability for injury caused by an independent contractor at a work site:

"It is not enough that [the employer] has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually re-

served to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way." Restatement (Second) of Torts §414, Comment *c*, at 388 (1965).

In this case the Commission had the contractual right only to review and approve Naperville's plans and specifications for the initial construction and later modifications of the pressure adjusting station. Arthur Malm indicated at his deposition that he, in fact, did review the engineering plans and specifications. However, Malm also testified that the Commission retained review and approval rights for two reasons, neither of which pertained to overseeing or directing the actual construction or the safety of the work site. First, since the two would ultimately be connected, the Commission wanted to confirm that Naperville's unit system would be compatible with the Commission's own waterworks system. Second, the Commission, which was obligated to reimburse Naperville for construction of the station, did not want to pay more than was necessary. Review of Naperville's plans and modifications would help control reimbursement costs. Malm indicated that if Naperville incurred costs without Commission approval, or contrary to the approved plans, it would merely run the risk of not being reimbursed for those costs.

The letter plaintiff cites, written by Malm to Naperville, was not part of the contract and was not necessarily binding on the municipality. However, read in its entirety the letter was, more than anything else, an explanation of the procedures the municipality was to follow in order to secure reimbursement from the Commission. For example, regarding change orders, the letter states:

"Change orders resulting in substantive changes to the operation or function of the station, or change orders where additional reimbursement by the Commission will be requested, must be approved in advance by the Commission."

Likewise, we believe the reservation of the right to inspect pertained, not to proper and safe construction as plaintiff urges, but to assuring that Naperville's requests for reimbursement were justified.

Finally, in his affidavit Malm testified that no one from the Commission designated any of the construction work methods, supplied materials for the project, or participated in scheduling of work or inspection of the construction site. At his deposition Malm again stated that, to his knowledge, no one from the Commission or the Commission's consulting engineering firm ever inspected the site or per-

formed work, operated equipment, or checked work in progress at the site.

The evidence cited by plaintiff is not persuasive that the Commission controlled Naperville as to the methods or details of constructing its pressure adjusting station. In our view, the Commission did not retain so much of a right of supervision that Naperville was not free to do the work in its own way. Accordingly, a duty on the Commission's part cannot be predicated on its involvement in construction of the pressure adjusting station.

Plaintiff's reliance on *Haberer v. Village of Sauget* (1987), 158 Ill. App. 3d 313, is not helpful to her position. In *Haberer* the defendant village had hired a safety consultant service for a construction project being performed by a contractor. The consultant prepared a detailed loss control program which imposed safety responsibilities on the contractor. The consultant was present at the construction site every day, inspected the site regularly, held safety meetings, and advised the contractor's safety director of violations. Despite this involvement, the court refused to uphold summary judgment for the plaintiff. Thus far, *Haberer* favors the conclusion we reach here. The defendant in *Haberer* was far more involved on a day-to-day basis, specifically with the safety aspects of its project, than the Commission was with any day-to-day aspect of Naperville's project. However, the *Haberer* court found that it was not clear whether the consultant could order work halted or order the removal from the site of unsafe equipment. The court held that a factual question remained as to whether Sauget retained sufficient control over the safety aspects of the project to warrant the imposition of liability. Contrary to plaintiff's claim that the court ruled in favor of plaintiff, the matter was merely remanded.

We do not believe that *Haberer* compels a remand here, however, because the evidence in this case reveals that the Commission retained only rights of review and approval for reasons unconnected with either the precision of the actual construction or the safety of the workplace. Plaintiff did not show that the Commission had any control at all over the safety of the jobsite. Nothing in the contract gave the Commission a right to take any action to ensure the safety of the workers. Too, according to the testimony, Naperville's refusal to honor the Commission's rights would not trigger any authority on the part of the Commission to halt work or otherwise direct the work. Instead, the Commission could refuse to reimburse Naperville for the costs of the pressure adjusting station. There are no factual questions remaining as to whether the Commission retained such control over

the safety aspects of the project that it should be subject to a duty, and thus liability, for the injuries complained of.

■ There is no merit to plaintiff's final argument that the Commission owed the decedent a statutory duty of care. Plaintiff invokes the following language from the Code:

> "The commission has full and complete supervision, management, and control of the waterworks system, or the common source of supply of water, or both, as provided in the ordinances or resolutions for acquiring and operating the same, and in their maintenance, operation, and extension." (Ill. Rev. Stat. 1989, ch. 24, par. 11—135—3.)

This language leaves no doubt the Commission was to have complete control of the waterworks system. The question is, which waterworks system? When the cited provision is read in context, it is evident the reference is to its own, rather than any municipality's waterworks. In fact, the very next sentence provides:

> "The commission is authorized to contract with the municipalities which established the commission for a supply of water to those municipalities, *** and the corporate authorities of those municipalities are authorized to enter into contracts with the commission." (Ill. Rev. Stat. 1989, ch. 24, par. 11—135—3.)

The statutory language contemplates separate systems, with the Commission having control over only its own system. We have already explained that the pressure adjusting station was part of Naperville's system. Although the statute undoubtedly gives rise to a duty on the part of the Commission where the Commission's own waterworks system is concerned, that duty does not extend to the unit system of Naperville or any other municipality.

Absent a showing from which the existence of a duty could be inferred, no recovery by plaintiff was possible, and summary judgment in favor of defendant was proper. (See *Vesey v. Chicago Housing Authority* (1991), 145 Ill. 2d 404, 411.) In light of this conclusion, we need not address any other matters raised by the parties.

For the reasons set forth above, the order of the circuit court of Du Page County granting summary judgment to defendant is affirmed.

Affirmed.

DOYLE and QUETSCH, JJ., concur.