# Third District Court of Appeal

## State of Florida

Opinion filed March 23, 2016.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D14-3007
Lower Tribunal No. 13-19279
_____

**Caridad Blanco Fuentes, individually and as Personal
Representative of the Estate of Edelberto Escalera Perez, Deceased,
for the Benefit of the Estate and Statutory survivors,**
Appellant,

vs.

**Sandel, Inc. and Rolling Shield, Inc.,**
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Diane V. Ward, Judge.

Barbara Green, P.A., and Barbara Green; Rubenstein Law P.A., and Anthony J. Soto, for appellant.

Conroy Simberg, and Hinda Klein and Elizabeth A. Izquierdo (Hollywood), for appellee Sandel, Inc.; Clarke Silverglate, P.A., and Karen H. Curtis and Mercer K. Clarke, for appellee Rolling Shield, Inc.

Before ROTHENBERG, EMAS, and FERNANDEZ, JJ.

ROTHENBERG, J.

After Edelberto Escalera Perez ("Escalera") fell to his death through a warehouse skylight while painting the warehouse roof, his widow, Caridad Blanco Fuentes ("Fuentes"), sued Rolling Shield, Inc. ("Rolling Shield") and Sandel, Inc. ("Sandel"), alleging that they were negligent by failing to keep the premises safe. Fuentes now appeals the trial court's entry of final summary judgment in favor of Rolling Shield and Sandel, and appeals the trial court's entry of an order granting Rolling Shield's motion to strike the affidavit of Fuentes's witness, George W. Zimmerman ("Zimmerman"). Because the undisputed facts demonstrate that neither Rolling Shield nor Sandel owed a duty to Escalera, an employee of an independent contractor hired to paint the warehouse roof, Fuentes's negligence claim fails as a matter of law. Based on this finding and our finding that the trial court did not abuse its discretion by striking Zimmerman's affidavit on the grounds that the affidavit contained only legal conclusions, we affirm.

## BACKGROUND

Rolling Shield is a hurricane shutters and awnings manufacturer which leased a warehouse from Sandel. Jose Delgado ("Delgado") was the president of Rolling Shield and Sandel during and prior to 2012. In April 2012, Rolling Shield hired Shade Technology, Inc. ("Shade") to paint the warehouse roof. Aureliano

2

Echevarria ("Echevarria"), the owner of Shade, was working as an installation manager for Rolling Shield in 2012. Shade subcontracted the work to Edelesca Services, Inc. ("Edelesca"), which was owned by Escalera. Escalera had been in the warehouse dozens of times and knew that its roof had skylights that let in ambient light. He also had experience working on high altitude jobs. Escalera's friend, Luis Perez ("Perez"), agreed to assist Escalera with the warehouse roof-painting job.

On the day of the accident, Delgado (the president of Sandel and Rolling Shield) and Echevarria (the owner of Shade) met with Escalera and Perez for thirty minutes before the men began to paint the roof. Delgado and Echevarria specifically warned the men about the danger of the skylights, about the need to stay fastened to the safety rope that was installed on the roof to protect them while on the roof, and not to paint the skylights or step on the skylights. Delgado and Echevarria further warned that if the men stepped on the skylights, they would fall through the roof. Perez confirmed these admonitions were given.

Escalera and Perez started to paint the roof at approximately 4:30 p.m., and they continued to work until it started to get dark. Echevarria testified that he had been on the roof with the workers almost the entire time they were painting, and that he came down from the roof at the end of the day to get some water. When Echevarria left the roof, both Escalera and Perez were in their safety harnesses and

connected to the safety rope on the roof. Perez testified that he was talking to Escalera as they were collecting their supplies for the night when he heard a noise and realized that Escalera had fallen through a skylight on the roof and that Escalera had not been connected to the safety rope when he fell. Escalera died in the fall.

Fuentes filed a complaint against Rolling Shield and Sandel, alleging that both were responsible for Escalera's death because they controlled, managed, and maintained the warehouse premises, and because Sandel owned and Rolling Shield leased the premises. The complaint alleged that Sandel and Rolling Shield were negligent by failing to comply with the building code, maintain the skylight, provide for a guard or screen around the skylight to prevent Escalera from stepping on the skylight, and warn Escalera of the danger.

Rolling Shield moved for summary judgment as to the negligence claim, arguing that it could not be held liable because Escalera was an independent contractor, and that, at most, Rolling Shield had a duty to warn—which was fully discharged. Sandel also moved for summary judgment and joined in Rolling Shield's motion for summary judgment, adopting the arguments made by Rolling Shield. In response, Fuentes argued that Rolling Shield had a duty to maintain the premises in a safe condition, Rolling Shield exercised control over Escalera's work and actively participated in the work, and Escalera died as a result of a dangerous

4

condition that was not related to the work he was hired to perform. Fuentes also argued that the warnings given to Escalera did not insulate Rolling Shield from liability, but instead created an issue of comparative negligence for the jury.

Fuentes filed a sworn affidavit signed by Zimmerman, a registered architect and licensed building inspector. Rolling Shield moved to strike the affidavit on the grounds that the affidavit set forth legal conclusions and provided an opinion on how to apply a legal standard. The trial court granted Rolling Shield's motion to strike after finding that the affidavit impermissibly attempted to instruct the trial court on how to decide questions of law.

The trial court also granted Rolling Shield's motion for summary judgment, finding that "the duty to invitees to maintain the premises in a reasonably safe condition does not apply to contractors hired to perform dangerous work," and that the danger posed by the skylights was inherent in, or at least incidental to, the work Escalera was hired to do. The trial court additionally found that whether Rolling Shield had exercised control over the work was not a factual issue in dispute because Fuentes failed to plead control or present evidence that there was someone, acting on behalf of Rolling Shield, who was present or was directing the work. Although Echevarria observed the work being performed, he did so as the owner of Shade, the company that was hired to paint the roof. Lastly, the trial court noted that it was undisputed that Escalera knew about the skylights and was

5

warned not to step on them and to remain harnessed and tied to the safety line when on the roof.

Thereafter, the trial court also granted Sandel's motion for summary judgment. In its order granting Sandel's motion for summary judgment, it incorporated the findings from its ruling on Rolling Shield's motion for summary judgment and additionally found that there was no evidence that Sandel supervised the work or was negligent. The trial court entered final judgments with respect to both orders granting summary judgment, and Fuentes filed the instant appeal.

## ANALYSIS

A trial court's entry of final summary judgment is reviewed de novo. Rocamonde v. Marshalls of Ma, Inc., 56 So. 3d 863, 864 (Fla. 3d DCA 2011). "Summary judgment is proper if there is no genuine issue of material fact and if the moving party is entitled to a judgment as a matter of law." Volusia Cty. v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126, 130 (Fla. 2000). "In negligence actions, the question of the duty owed to a plaintiff is always one of law and never one for the jury," and the trial court may grant summary judgment "where a defendant establishes as a matter of law, that no duty is owed to the plaintiff." Strickland v. TIMCO Aviation Servs., Inc., 66 So. 3d 1002, 1006 (Fla. 1st DCA 2011).

**A. Independent Contractors**

As a general rule, "a property owner who employs an independent contractor to perform work on his property will not be held liable for injuries sustained by the employee of an independent contractor during the performance of that work." Strickland, 66 So. 3d at 1006. There are two exceptions to this rule. First, a property owner may be held liable for an independent contractor's employee's injuries if the owner actively participated in the work or exercised direct control over the work, and failed to exercise that control with reasonable care. Id.; Armenteros v. Baptist Hosp. of Miami, Inc., 714 So. 2d 518, 521 (Fla. 3d DCA 1998). The second exception applies where the property owner fails to warn the contractor about concealed dangers not inherent in the work of which the owner had actual or constructive knowledge and which were unknown to the contractor or could not have been discovered through due care. Id.

**(1) The direct control exception**

This exception requires more than the "general right" to control when the work begins or ends, to inspect the work, to make suggestions about how the work should be performed, or to require deviations in the course of the work. Armenteros, 714 So. 2d at 522. As the Fourth District Court of Appeal recognized in Morales v. Weil, 44 So. 3d 173, 176 (Fla. 4th DCA 2010), "[a]n owner may retain various controls over the independent contractor's work without usurping

7

the shield of liability. Indeed, the amount of control needed to pierce the shield of liability must be extensive."

The employer must actually exercise control over the **manner** in which the independent contractor's work was performed. Sterling & Mgmt., Inc. v. Gitenis, 117 So. 3d 790, 794 (Fla. 4th DCA 2013). And "[m]erely exercising a general right to recommend a safe manner for the independent contractor's employees to perform their work is insufficient to subject a party to liability." Id. (internal quotation marks and citations omitted).

In addition to requiring the exercise of sufficient control over the manner in which the work was performed, the plaintiff must allege and offer proof that the defendant was negligent in the exercise of that control.

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care which is caused by his failure to exercise his control with reasonable care.

Armenteros, 714 So. 2d at 521 (quoting Restatement (Second) of Torts § 414). See also Conklin v. Cohen, 287 So. 2d 56, 60 (Fla. 1973) (holding that to impose liability on the owner based on his control "one or more specific identifiable acts of negligence, . . . resulting in the injury or death to an employee, must be established").

Fuentes did not allege in her complaint that either Rolling Shield or Sandel controlled or directly influenced the manner in which the work was performed, and Fuentes never pled how either defendant was negligent in the exercise of such control. See Mather v. Northcutt, 598 So. 2d 101, 102 (Fla. 2d DCA 1992) ("To state a cause of action in negligence, a complaint must allege ultimate facts which establish a relationship between the parties giving rise to a legal duty in the defendant to protect the plaintiff from the injury of which he now complains."). The failure to allege how the control was exercised and specifically how the duty of reasonable care created by the alleged control was breached precludes Fuentes from relying on the control exception.[1]

Although the control exception was not properly pled, even if it had been, summary judgment was properly granted because the undisputed record evidence does not support the level of control necessary to invoke the control exception. At most, the undisputed evidence shows that Delgado and Echevarria supplied painting materials and safety equipment to Escalera and Perez and fully explained to Escalera and Perez that if they stepped on any of the skylights they would fall through the skylight, and Echevarria remained on sight to observe the work as it was being performed. This evidence was insufficient to establish that either

---

[1] The trial court correctly notes that the control exception does not create strict liability for any injury to a contractor's employee. The plaintiff must sufficiently allege that the owner was somehow negligent in exercising that control.

defendant controlled "the methods of work and operative details." <u>Armenteros</u>, 714 So. 2d at 523; <u>see also</u> <u>Strickland</u>, 66 So. 3d at 1006-07 (stating that neither the fact that the owners provided the safety harnesses to the independent contractor's employees nor the "mere inspection by a property owner of an independent contractor's work" is sufficient to prove that the owner controlled the work or actively participated in it); <u>St. Lucie Harvesting & Caretaking Corp. v. Cervantes</u>, 639 So. 2d 37, 39-40 (Fla. 4th DCA 1994) (holding that directing the independent contractor to harvest a specific amount of fruit from a specific grove was insufficient to prove that the owner exercised the necessary degree of control to satisfy the control exception).

**(2) <u>The duty to warn exception</u>**

The second exception allows an employee of an independent contractor to hold a property owner liable if the owner fails to warn the contractor about concealed dangers not inherent in the work of which the owner had actual or constructive knowledge and which were unknown to the contractor or could not have been discovered through due care. <u>Strickland</u>, 66 So. 3d at 1006. However, "where the danger is open and apparent or readily ascertainable, the property owner is under no duty to warn and will not be held liable for injuries sustained by the employee of an independent contractor in performing work under the contract." <u>Id.</u> (citing <u>Roberts v. Dacra Design Assocs., Ltd.</u>, 766 So. 2d 1184, 1185 (Fla. 3d

10

DCA 2000)) (holding that a property owner was not liable when a repairman fell on a piece of pipe lying on the ground because the repairman could have discovered the dangers of construction materials lying on the ground with the exercise of due care); Morales, 44 So. 3d at 178-79.

The undisputed evidence in the instant case is that the danger posed by the skylights was open and apparent and Escalera actually knew about the danger that they posed. Escalera had visited the warehouse on numerous occasions and was aware of the skylights. When on the roof, the skylights were easily identifiable. The evidence established that they were placed in a pattern on the roof, a different color and material than the roof, and marked with a black border. Delgado, Perez, and Echevarria all testified that there was a distinct difference between the skylights and the roof. Regarding the danger these skylights posed to Escalera, Escalera was specifically warned and the defendants provided the safety equipment to protect Escalera while working on the roof and near the skylights. Both Delgado and Eschevarria warned Escalera several times in their thirty-minute discussion with Escalera and Perez before they began working on the roof not to step on the skylights, the skylights would not withstand his weight and he would fall through them, and he must stay harnessed and tethered to the safety rope while on the roof.

We therefore find that summary judgment was properly granted in this case. Fuentes failed to plead or prove the requisite control or any negligence by the

11

defendants to pierce the shield of liability under the first exception or that the defendants failed to warn Escalera about a concealed danger not inherent in the work and which was unknown to Escalera under the second exception. Thus, the general rule that property owners owe no duty to employees of independent contractors who are injured during the course of the work the contractors were hired to perform applies, and Fuentes's negligence claim fails as a matter of law.

## B. <u>The Zimmerman Affidavit</u>

We next turn to the issue of whether the trial court properly excluded Zimmerman's affidavit discussing Rolling Shield's alleged liability under the South Florida Building Code ("the Code"). We review the trial court's evidentiary rulings for an abuse of discretion. <u>Johnson v. State</u>, 969 So. 2d 938, 949 (Fla. 2007). "[D]iscretion is abused only where no reasonable man would take the view adopted by the trial court." <u>Canakaris v. Canakaris</u>, 382 So. 2d 1197, 1203 (Fla. 1980) (quoting <u>Delno v. Mkt. St. Ry. Co.</u>, 124 F.2d 965, 967 (9th Cir. 1942)).

We find that the trial court did not abuse its discretion when it struck Zimmerman's affidavit because it was permeated by improper legal conclusions. <u>See</u> <u>Kayfetz v. A.M. Best Roofing, Inc.</u>, 832 So. 2d 784, 786 (Fla. 3d DCA 2002) (reversing a final judgment where a trial court allowed an expert to testify as to his opinions regarding the "Plaintiffs responsibilities under [the Code], essentially instructing the jury on the issue of legal liability in this case"). As stated earlier,

whether a defendant owes a duty to a plaintiff is always a question of law. <u>Volusia</u> <u>Cty.</u>, 760 So. 2d at 130. Nevertheless, paragraphs 6 and 7 of Zimmerman's affidavit, the only substantive sections in the affidavit, contain a discussion of the purpose behind the Code, and the legal conclusions that "Rolling Shield, the tenant, had an equitable interest in the premises and **had a duty** to ensure the safety of the premises, and it's [sic] compliance with Code mandated structural standards." (emphasis added). Zimmerman's affidavit went on to interpret the scope of Rolling Shield's duty and concluded that Rolling Shield breached its legal duty when it "failed to ensure the structural loading capability of the plastic roof panels, as required by the [Code]."

## CONCLUSION

We affirm the trial court's entry of final summary judgment as to both Rolling Shield and Sandel because Fuentes could not, as a matter of law, prevail against either defendant where neither party owed a duty of care under the undisputed facts, and it is undisputed that Rolling Shield and Sandel warned Escalera not to step on the skylights because he would fall through the roof, specifically provided a harness and safety rope to protect Escalera from any potential fall, and instructed Escalera to wear his harness and stay fastened to the safety rope when on the roof. We also affirm the trial court's reasonable decision to strike Zimmerman's affidavit on the grounds that it was pure legal conclusion.

Affirmed.