SHEPHERD, J.
I respectfully dissent.
The question in this case is under what circumstances a lender may choose to apply the proceeds of a homeowner’s insurance policy to the debt due under the mortgage rather than to the repair or restoration of a home that has suffered a fire loss. The operative language of the mortgage reads as follows:
Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender’s security is not lessened... .If *800 the restoration or repair is not economically feasible or Lender’s security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to the Borrower.
In other words, a lender is contractually bound by this provision to accede to the use of insurance proceeds received as a result of a covered property loss if two independent conditions are satisfied: (1) restoration and repair of the property is “economically feasible” and (2) the Lender’s security is not lessened as a result. On summary judgment, it therefore falls to the lender to demonstrate indisputably either that restoration and repair of the property is not economically feasible, or that the lender’s security will be lessened as a consequence of proceeding with the repair. I believe the lender met its burden on both of these grounds in this case. In addition, I believe the undisputed fact that the borrower was in default in this case long before the date of loss and has remained so constitutes a separate basis for affirmance.
On the first ground, the phrase “economically feasible” is undefined in the mortgage, and the parties provide no guidance to us as to its meaning. Electronically assisted research of all federal and state case law discloses just one case where a court has attempted to define the phrase. In Vongohren v. Citimortgage, Inc., JFM-14-3549, 2016 WL 739070, at *4 (D. Md. Feb. 25, 2016), Judge J. Frederick Motz of the United States District Court of Maryland reasoned to the following definition:
Feasibility is defined as “[t]he possibility that something can be made, done, or achieved, or that it is reasonable; practicability.” Feasibility, BLACK’S LAW DICTIONARY (10th ed. 2014). Because “economically” modifies “feasible” in the parties’ loan agreement, and defining “economically feasible” as simply “economically possible” has no limiting principle, the best interpretation of “economically feasible” is “economically reasonable” or “practicable.”
I find Judge Motz’ reasoning in this case to be persuasive. While it may be economically possible to repair the property in question, assuming Alvarez-Mejia was willing to advance the remainder of the funds in excess of the insurance proceeds to perform the repair on the property, I believe it is not “economically reasonable” or “practicable” to do so.
The following evidence was presented to the trial court on the issue of the economic feasibility of repair: (1) the mortgage showing the original $120,000 debt; (2) an estimate prepared by The Combined Group, dated November 12, 2012, signed by Alvarez-Mejia, of $98,717 to repair the fire damage[1]; (3) an appraisal of the home commissioned by the lender, valuing the property at $90,000 after repairs;[2] (4) an affidavit by Alvarez-Mejia in which she averred, without supporting facts, that “[o]nce repaired, the value of the [property will be significantly greater than the outstanding balance on the mortgage”; and (5) an affidavit by Alvarez-Mejia’s counsel’s office manager, attaching an unsigned estimate of repairs alleged to have been prepared by The Combined Group on April 11, 2013, stating the cost of repair to be $53,117.
*801 The majority would have us believe the latter two affidavits together created a genuine issue of material fact barring summary judgment. However, the trial judge correctly found that they were legally insufficient for consideration. Alvarez-Mejia’s affidavit was properly excluded from consideration as conclusory opinion evidence. See Pla. R. Civ. Proc. 1.510(e) (“Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.”) Her conclusion that after repairs the value of the home will exceed the outstanding balance on the mortgage was an opinion on the ultimate issue to be decided in the case. See, e.g., Carter v. Cessna Fin. Corp., 498 So.2d 1319, 1320 (Fla. 4th DCA 1986) (“In short, a party does not create a fact question merely by placing his assertions in affidavit form.”); see also Fuentes v. Sandel, Inc., 189 So.3d 928, 935 (Fla. 3d DCA 2016) (upholding a trial court’s exclusion of an affidavit which only contained legal conclusions); Castro v. Brazeau, 873 So.2d 516, 517 (Fla. 4th DCA 2004) (determining “conclusion of one passenger that [defendant] had to be speeding based upon the crash damage to [plaintiff’s] vehicle was not competent evidence because passenger was not qualified as an expert”); compare McNabb v. Taylor Elevator Corp., 203 So.3d 184 (Fla. 2d DCA 2016) (finding expert’s conclusions as to duration of a leak sufficiently supported by observation and testing).
The second affidavit of counsel’s office manager and self-described records custodian, attaching a later dated repair estimate alleged to have been prepared by The Combined Group, is even more deficient. First, the repair estimate was ex-cludable as hearsay, “a statement other than one made by the declarant ... offered in evidence to prove the truth of the matter asserted,” § 90.801(1), Fla. Stat. (2016), because not introduced by The Combined Group’s .record custodian. § 90.802(6), Fla. Stat. (2016) (defining a business record as “[a] record ... of acts ,.. made at or near the time .... by a person with knowledge, if kept in the course of a regularly conducted business and if it was the regular practice of that business activity to make such memorandum, report [or] record.”) Additionally, the unsigned repair estimate was excluda-ble for lack of authentication. Nichols v. Preiser, 849 So.2d 478, 481 (Fla. 2d DCA 2003) (“Simply attaching documents that are not sworn or certified to a motion for summary judgment does not satisfy the procedural requirements of Florida Rule of Civil Procedure 1.510(e).”); Daeda v. Blue Cross & Blue Shield of Fla., 698 So.2d 617, 618 (Fla. 2d DCA 1997) (“Under our rules of civil procedure ... only competent evidence may be considered by the court in ruling upon a motion for summary judgment”); see also Freiday v. OneWest Bank, 162 So.3d 86 (Fla. 4th DCA 2014) (excluding default letter attached to motion for summary judgment but not otherwise authenticated). The second repair estimate allegedly came from the same company which prepared the first estímate which was submitted to the insurance company. A side-by-side comparison of the two estimates reveal only three differences; the contract dates, the amount for repairs, and the absence of Alvarez-Mejia’s signature on the later estimate. The details of the work to be performed are identical, and Alvarez-Mejia never provided an explanation as to the reason for the change in the cost to perform the same repairs.
Accordingly, accepting the repair estimate of $98,717 as the only accurate cost of repair and the property value estimated *802 to be $90,000, it is neither “economically reasonable” nor “practicable” to expend $98,717 to obtain a $90,000 benefit in this case. See Vongohren at *5 (finding no genuine issue of material fact to exist where necessary repairs would cost $67,500 and add only $35,000 in value, especially where the borrowers are in default under their loan agreement).
As to the second ground, we only need to acknowledge that the insurance proceeds, when granted by the insurer, become part of the security for the loan. Accordingly, an expenditure for restoration or repair of a property which ends with a property value less than the amount expended constitutes, a fortiori, a “lessening” of the lender’s security. Parenthetically, it should be noted that a careful consideration of the language of the second ground in section 5 of the mortgage reveals it is not the post-repair adequacy of the security that is determinative of whether the lender’s security will be “lessened” by a repair or restoration, but rather the post-repair value of the security itself. In re Hill 2011 WL 6936357, at *12 (Bkrtcy.S.D.Tex. 2011)(noting the abiding interest of the lender during the course of loan is not the outstanding balance on the loan at any point in time, but rather “ensuring that the value of its collateral ... is maintained, if not enhanced”).
Finally, in a fashion very similar to the Vongohrens in their case, Alvarez-Mejia, in the case before us, defaulted on her mortgage loan long before the fire loss occurred to property, and there is no evidence in the record that she has brought the loan current. Although not raised by the parties or considered below, I would find this alone is sufficient, as a matter of law, to make repair economically unfeasible in this case. See Vongohren at *4.
For all of these reasons, I would affirm the decision of the trial court.

. This estímate was submitted by Alvarez-Mejia to her insurer and netted the disputed $94,162.52 insurance proceeds being held by the lender.

. Because the lender was denied access to the interior of the home, this appraisal was conducted from outside the home.