639 So.2d 37 (1994)
ST. LUCIE HARVESTING AND CARETAKING CORPORATION n/k/a St. Lucie Caretaking Corporation, and Ten Mile Creek Groves, Inc., a Florida corporation, Appellants,
v.
Vicente CERVANTES, Appellee.
Nos. 92-0877, 92-1326.
District Court of Appeal of Florida, Fourth District.
April 13, 1994.
*38 Debra J. Snow and Philip D. Parrish of Stephens, Lynn, Klein & McNicholas, P.A., Miami, for appellants.
Grover, Ciment, Weinstein, Stauber, Friedman & Ennis, P.A., Miami Beach, Kerry E. Mack, Englewood, and Joel D. Eaton of Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin, P.A., Miami, for appellee.

ON MOTION FOR REHEARING
KLEIN, Judge.
The opinion of this court filed February 23, 1994, is withdrawn and the following opinion, which is identical except for footnote 1, is substituted. Appellee's motion for rehearing is denied.
Plaintiff injured himself while using equipment owned by his employer. He sued the defendants, for whom his employer was performing services as an independent contractor, on the theory that the defendants exercised direction and control over the manner in which the independent contractor was carrying out its work and negligently caused the plaintiff's injury. The jury returned a verdict for plaintiff, and defendants appeal, arguing that they were not participating in the details of the work so as to make them liable to the employee of an independent contractor. We agree and reverse for entry of a directed verdict.
Defendants are grove owners/operators (grove owners) who employed Gordy Harvesting to pick its fruit. It is undisputed that Gordy was an independent contractor. The independent contractor's job was to remove the fruit from the trees and get it to the edge of the orange grove, where it could be transported by another contractor to a processing factory. The independent contractor employed fruit pickers including plaintiff and owned the equipment which it used, including vehicles known as goats. A goat is a 2 1/2 ton dump truck, which has been stripped down and reconfigured by the addition of a high-lift bin and a boom. Goats have no doors or seatbelts and are specifically designed to be used in citrus groves. They are not designed for use on the highways, however, they are routinely driven on the highways.
The workers pick the fruit from the trees and put it into tubs. The goat's boom lifts the tubs and then tilts them, dumping the fruit into the goat's bin. The goat is then driven to the edge of the grove so that the fruit can be loaded onto trucks, which deliver the fruit to a processing factory. When loaded with fruit a goat has a higher center of gravity than when empty, which makes it more susceptible to rolling over in a turn.
Plaintiff was injured, while driving a goat loaded with fruit from one grove to another, when he turned a corner too fast and caused the goat to roll over. His cause of action against the defendant grove owners was based on the theory that defendants' foreman negligently "directed" that this goat be moved from one grove to another, 2 1/2 miles away, without making sure that the goat was unloaded before it made the trip. Plaintiff argues that if the grove owners had a truck at the edge of the grove so that the goat could have been unloaded prior to being driven to the next grove, the center of gravity would have been lower, and it would not have rolled over.
Generally one who hires an independent contractor is not liable for injuries sustained by employees of the independent contractor. In Conklin v. Cohen, 287 So.2d 56, 60 (Fla. 1973), however, our supreme court *39 held that there was an exception to this rule where the owner actively participates "to the extent that he directly influences the manner in which the work is performed" and negligently creates or allows a dangerous condition to exist resulting in injury to the employee of the independent contractor. Viewing the facts in a light most favorable to plaintiff, we conclude that this case falls within the general rule, and not the Conklin exception.
The specific facts relating to defendants' involvement in this accident began when the defendant grove owners' foreman told the independent contractor's foreman that enough fruit had been picked at one grove, and that the crew was to pick fruit at another grove, a few miles away. At that time the goat which the crew was using was loaded with fruit, and there was no truck at the edge of the grove into which the fruit could be loaded so that the goat could be emptied. Defendant's foreman was aware that the independent contractor was going to take this loaded goat down to the next grove. Defendant's foreman helped the crew place a cover over the fruit, which was required when it was being transported because of the possibility of spreading citrus canker.
The independent contractor's foreman testified that he normally drove the goat, but since he had to drive the van to transport the workers to the next grove, he told the plaintiff to drive the goat. The plaintiff was not experienced in driving the goat on the highway, and, during the trip, as he was making a turn from the highway onto a dirt road, the goat rolled over and injured him.
Plaintiff bottoms his claim on the fact that defendants' foreman "directed" that this loaded goat be taken to the next grove; however, the most that can be said is that defendants' foreman directed the crew to pick at another grove and was aware that the crew would take its loaded goat to the other grove.[1]
In all of the cases relied on by plaintiff, including Conklin, the injury to the employee of the independent contractor occurred while work was being performed on defendant's premises and the defendant was actively participating in the direction of the work or failing to provide a safe place to work. Hogan v. Deerfield 21 Corp., 605 So.2d 979 (Fla. 4th DCA 1992); Boatwright v. Sunlight Foods, Inc., 592 So.2d 261 (Fla. 3d DCA 1991); Life From the Sea, Inc. v. Levy, 502 So.2d 473 (Fla. 3d DCA 1987); Cadillac Fairview of Florida, Inc. v. Cespedes, 468 So.2d 417 (Fla. 3d DCA 1985); and Atlantic Coast Development Corp. v. Napoleon Steel *40 Contractors, Inc., 385 So.2d 676 (Fla. 3d DCA 1980).
In the present case, unlike those on which plaintiff relies, plaintiff was not injured because of any condition of the defendants' premises or equipment. Nor were defendants exercising any control over the manner in which this crew was performing its work. Defendants' foreman told the independent contractor's foreman when the crew had picked enough fruit at one grove, and where the crew should begin picking thereafter, but exercised no control over how the crew got to the next grove, what equipment was used, what route the crew took, how fast the crew went, or who drove the goat. The goat, which was allegedly dangerous, was owned by the independent contractor, not the defendants. The plaintiff, who was not experienced in driving the goat on the highway, was told to drive the goat by the foreman of the independent contractor, not the defendants.
In Van Ness v. Independent Construction Co., 392 So.2d 1017, 1019 (Fla. 5th DCA 1981), a wall collapsed during construction and injured the employee of an independent contractor. He sued the owner, alleging that it actively participated; however, the fifth district affirmed a summary judgment in favor of the owner because the facts reflected that there was insufficient participation by the owner, stating:
To impose liability on the owner for retention of control over an independent contractor, there must be such right of supervision or direction that the contractor is not entirely free to do the work his own way. Restatement of Torts (Second), section 414, comment (c).
In Skow v. Department of Transportation, 468 So.2d 422 (Fla. 1st DCA 1985), an employee of the general contractor constructing a bridge for the DOT was injured when he was working without a safety belt and fell. He sued the DOT claiming that it had assumed detailed control over the work and failed to enforce safety regulations. The first district affirmed a summary judgment for the DOT because the undisputed facts reflected that the DOT only participated to the extent necessary to ascertain the results of the work, and not to control the method of performance.
In the present case the facts are undisputed that the grove owners exercised no control over the independent contractor other than to direct the independent contractor in regard to the amount of fruit to be harvested and from which grove. The grove owners had no control over what equipment was used by the independent contractor, how that equipment was used or by whom it was used.
In the Boatwright case, on which plaintiff relies, the equipment on which the independent contractor was working on the owner's premises was designed and modified by the owner. In addition, the independent contractor had requested the owner to install a guardrail around the equipment, which was up on a platform, and the owner had refused to do so. In contrast, in the present case the allegedly dangerous piece of equipment was owned and operated under the direction of the independent contractor, and when the independent contractor was directed to pick at another grove, no one gave any indication to the grove owners' foreman that moving the loaded goat was a problem. If the defendants had owned the goat and required the independent contractor's employees to use it in a dangerous manner, defendants might well have been liable. We have been cited no authority, however, which would allow recovery from the party for whom the independent contractor was performing services under the circumstances of this case.
Plaintiff argues in the alternative that Maldonado v. Jack M. Berry Grove Corp., 351 So.2d 967 (Fla. 1977), supports his position. In that case, which also involved an injury by a goat, the parents brought their three-year-old child to the citrus grove and put him in an empty tub while they filled other tubs with fruit. The driver of the goat, who was employed by an independent contractor, negligently backed over the child, who had climbed out of the tub. The supreme court held that because the owner of the grove was aware that workers were bringing small children on the premises, the fact that the dangerous condition was created by an independent contractor would not shield the employer/landowner from liability *41 if the employer/landowner negligently failed to alleviate the dangerous situation. The accident in the present case did not occur on defendants' premises. These defendants could not be held liable, as the Maldonado defendant was, for failing to alleviate a known dangerous condition on their premises. Maldonado does not, therefore, provide a theory to support recovery here.
We therefore reverse and remand for entry of a directed verdict in favor of the defendants.
HERSEY and GUNTHER, JJ., concur.
NOTES
[1] Throughout his brief plaintiff's counsel emphasizes that defendants' foreman "directed" that the loaded goat be taken to the next grove, with record references. For example on page four of appellee's brief it is stated:

One customary option available to Mr. O'Neal [defendants' foreman] in such a circumstance was to have Mr. Gordy's crew unload the goat into tubs at the edge of the grove, where they could be loaded into a semi-trailer at a later time (R. 951). Mr. O'Neal did not utilize this option, however. Instead, he "directed" Mr. Gordy's crew leader to move the fully-loaded goat 2 1/2 miles over a public highway to Ten Mile Creek's "Pennsylvania Grove," where an empty semi-trailer was available for unloading the goat (R. 524, 541-42, 564-66, 590-93, 606, 611-13, 647, 718, 918, 948, 954, 972-73).
The use of quotes around the word directed is an indication that these were words used by someone else, and that someone else, particularly in light of the record references at the end of the sentence, was a witness. The American Heritage Dictionary of the English Language 1073 (new college ed. 1981) defines quotation marks as "a pair of punctuation marks used to mark the beginning and end of a passage attributed to another and repeated word for word." No witness testified that the defendants' foreman directed that the goat be taken to the next grove nor was there any testimony that could even loosely be interpreted as such. It is not only the use of quotation marks which is improper. With or without quotation marks this was a mischaracterization of the testimony which was central to the issue on appeal.
In his motion for rehearing counsel for plaintiff points out that although the primary definition of quotation marks is as set forth above, there are secondary uses of quotation marks which do not indicate the exact words of another. He also notes that his brief contained other words in quotation marks. He says that he did not intend to mislead the court into thinking he was quoting testimony. Although we have decided, in fairness to counsel, to publish his explanation, it does not persuade us to reconsider our comment. Appellate judges should not have to wonder, when reading factual statements containing words in quotes followed by record references, what counsel intended.