DAMOORGIAN, J.
Humberto Morales appeals the trial court’s adverse final summary judgment on his claim of negligence and the directed verdict on his premises liability claim in favor of the Weils. We affirm both actions taken by the trial court.
During the course of the pretrial proceedings and trial, the following facts were adduced. The Weils owned property which included a horse barn. Two hurricanes came through the property, which caused substantial damage to the barn. The damage included a hole through the roof which was visible to the naked eye. The Weils met with Nicholas Garrett, an independent contractor, to discuss the demolition of the damaged barn and the construction of a new barn. Mr. Weil rejected the part of Garrett’s proposal to demolish the damaged barn, but the Weils agreed to hire Garrett to construct a new barn.
Morales testified that the Weils hired Garrett, in a side deal, to demolish the old bam so that it looked as if the hurricanes had destroyed it.[1] Morales’ father, Adrian, worked for Garrett and was the foreman on the Weils’ project. Adrian testified that two days prior to Morales’ injury, he went with Garrett to the Weils’ home to discuss the barn’s demolition with Mrs. Weil. During this visit, Mrs. Weil allegedly instructed Garrett to throw the panels of the barn’s roof “here and there” in order to create the impression that the *176 damage was caused by a hurricane. Garrett then instructed Adrian to have his crew go on the roof and begin the demolition in accordance with Mrs. Weil’s instructions. Two days later, Adrian, Morales, and several other Garrett employees went to the Weils’ home to demolish the barn’s roof. The employees could see that the barn was visibly damaged. Nonetheless, they climbed onto the roof and began to demolish it. Shortly thereafter, Morales fell through a weakened roof panel. As a result of the fall, Morales suffered injuries.
Morales brought suit against the Weils claiming that (1) they were, negligent in failing to protect him from injury and (2) they failed to provide a safe place to work by maintaining the premises in a reasonably safe condition. The Weils moved for summary judgment on both of these counts. The trial court granted the motion as to the general negligence claim, but denied summary judgment on the premises liability claim. At the conclusion of the trial, the Weils moved for a directed verdict on the premises liability claim. The trial court entered a directed verdict against Morales. This appeal follows.
Our analysis begins with the trial court’s summary judgment on the negligence claim. “Summary judgment is proper if there is no genuine issue of material fact and if the moving party is entitled to a judgment as a matter of law.” Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000) (citing Menendez v. Palms W. Condo. Ass’n, 736 So.2d 58, 60 (Fla. 1st DCA 1999)). A trial court’s final order granting a motion for summary judgment is reviewed de novo. Johnson v. Boca Raton Cmty. Hosp., Inc., 985 So.2d 593, 595 (Fla. 4th DCA 2008) (citing The Fla. Bar v. Greene, 926 So.2d 1195, 1199 (Fla.2006)).
We have held that, “[a]s a general rule, one who hires an independent contractor is not liable for injuries sustained by that contractor’s employees in performing their work.” Johnson, 985 So.2d at 595 (citing Cecile Resort, Ltd. v. Hokanson, 729 So.2d 446, 447 (Fla. 5th DCA 1999) (holding that resort owner was not liable on general negligence or premises liability claims for injuries sustained by an independent contractor who had been hired to paint a flag pole)).
An exception to the general rule exists if the owner has been “ ‘actively participating in the construction to the extent that he directly influences the manner in which the work is performed.’ ” Johnson, 985 So.2d at 595-96 (quoting Conklin v. Cohen, 287 So.2d 56, 60 (Fla.1973)). An owner may retain various controls over an independent contractor’s work without usurping the shield of liability. See City of Miami v. Perez, 509 So.2d 343, 346 (Fla. 3d DCA 1987). Indeed, the amount of control needed to pierce the shield of liability must be extensive:
“It is not enough that [the owner] has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work his own way.”
Cecile Resort, Ltd., 729 So.2d at 448 (quoting Armenteros v. Baptist Hosp. of Miami, Inc., 714 So.2d 518, 522 (Fla. 3d DCA 1998)).
*177 In Perez, the City of Miami hired an engineer to monitor a construction site where independent contractors were building a new police station. 509 So.2d at 344-45. The engineer was hired to observe the quality of the materials used and the contractors’ workmanship to ensure compliance with the plans and specifications for the job. Id. at 347. The engineer did not have the authority to direct or influence any of the independent contractors’ workers, nor could he tell them how to do their job. Id. One of the workers was injured when he fell while disassembling scaffolding. Id. at 344. The Third District held that the city was not an active participant on the job because the engineer they hired was present on the worksite only in a supervisory capacity. Id. at 348-50. Thus, the city was not liable for the worker’s injuries. Id. at 348-50 (noting that “participation in construction involves actual involvement in directing the construction methods utilized by the contractor.”).
In Cadillac Fairview of Florida, Inc. v. Cespedes, 468 So.2d 417, 419, 421 (Fla. 3d DCA 1985), an owner/general contractor was building homes in a development where an employee of an independent contractor was injured while working on one of the homes. Cadillac had a staff of field supervisors who oversaw, directed, and coordinated the construction work. Id. at 421. The superintendent on the job made daily progress reports to Cadillac and sometimes became physically involved in the construction project. Id. Additionally, Cadillac acquired the necessary permits for the project. Id. The Third District recognized that an owner has a general power to inspect the work of an independent contractor to ensure that the work conforms to the contract without becoming an active participant. Id. However, the court held that Cadillac went beyond these powers because it actively directed and coordinated the work. Id. Thus, Cadillac was liable for the injuries to the worker. Id.
Finally, in St. Lucie Harvesting and Caretaking Corp. v. Cervantes, 639 So.2d 37, 38 (Fla. 4th DCA 1994), an owner of a citrus grove employed an independent contractor to pick and transport fruit on the owner’s land. One of the owner’s foremen directed one of the independent contractor’s employees to pick up fruit at a different grove which was a couple miles away. Id. The employee was driving a “goat” vehicle loaded with citrus, which had a higher tendency to tip over when full. Id. at 38. The employee was injured when the goat tipped over as he was driving it on the highway to the other grove. Id. This court held that the owner of the citrus grove was not liable for the employee’s injuries. Id. at 39, 41. We noted that, even though the owner was aware the independent contractor would use the loaded goat to get to the next grove, he did not otherwise control the methods of accomplishing his desired result, the picking of fruit. Id. at 40.
In this case, Morales contends that summary judgment was improper because there is a material question of fact as to whether the Weils assumed enough control over the methods of accomplishing the demolition work to expose them to liability. In support of this claim, Morales argues that using a bulldozer would have been the safest method to demolish the roof. However, because the Weils wanted the demolition to appear as hurricane damage, the bulldozer could not be employed. Instead, the workers, Morales included, were instructed to get on the roof and scatter the panels by hand. Thus, Morales asserts that requiring the demolition to be performed by hand constitutes the requisite control over the independent contractor in order to expose the Weils to liability. Morales reasons that had the Weils not *178 exercised such control, the contractor would have used a bulldozer and not required the hand work to be performed on the roof.
Although the Weils may have been aware that the workers would necessarily have to get on the roof in order to accomplish their desired result, this alone does not make them liable to Morales for his injuries. The Weils may have told Garrett to scatter the roof debris to imitate hurricane damage, but they did not instruct the workers on how to accomplish this goal. Unlike Cadillac, the Weils did not coordinate, oversee or direct the workers in any way. See Cadillac, 468 So.2d at 421. They did not tell the workers how to get on the roof, where to stand on the roof, what tools to use, or what safety equipment to either use or not use. See Perez, 509 So.2d at 347. Moreover, the Weils were not even present at the barn when the roof was being demolished. See Van Ness v. Indep. Constr. Co., 392 So.2d 1017, 1018-20 (Fla. 5th DCA 1981) (owners of department store were not active participants because they were not present at construction site and did not otherwise control methods of work). Thus, the Weils’ control over the independent contractor was restricted only to dictating the results of the demolition job, rather than the means used to accomplish this result. See Cervantes, 639 So.2d at 40. Likewise, the Weils’ awareness of the method for accomplishing their project does not constitute control over the independent contractor. See Cervantes, 639 So.2d at 40-41. Accordingly, the trial court was correct to enter summary judgment on this claim.
Next, Morales argues that the trial court erred in entering the directed verdict for the Weils on his premises liability claim. He contends that the Weils were negligent in failing to maintain the roof in a reasonably safe condition. Our standard of review of a trial court’s order granting a motion for a directed verdict is de novo and we review the evidence and inferences of fact in the light most favorable to the non-moving party. Meruelo, 12 So.3d at 250.
It is well established that landowners owe a general duty to invitees (1) to use reasonable care to maintain their premises in a reasonably safe condition and (2) to warn the invitee of any concealed dangers that the owner knows or should know about, which are unknown to the invitee and cannot be discovered by the invitee through due care. See Johnson, 985 So.2d at 595-96; Ahl v. Stone Sw., Inc., 666 So.2d 922, 923 (Fla. 1st DCA 1995) (citing Regency Lake Apartments Assocs. v. French, 590 So.2d 970, 973 (Fla. 1st DCA 1991)). On appeal, Morales’ claim focuses only on the Weils’ duty to maintain the roof in a reasonably safe condition, rather than the duty to warn him about the hazardous condition of the roof. He claims that, as an invitee, the Weils are liable to him for his injuries because they did not ensure that the roof was safe for him to demolish.
Although landowners generally owe a duty to invitees to maintain the premises in a reasonably safe condition, an exception applies in regard to independent contractors hired to perform hazardous work:
[T]he law carves out an exception to the requirement that premises be made safe for an independent contractor when the contractor is invited onto the land to perform a specific task in respect of the hazard itself. As stated in Muhammad [v. N.J. Transit, 176 N.J. 185, 821 A.2d 1148 (2003) ] the duty to provide a reasonably safe working place for employees of an independent contractor does not relate to known hazards which are part of or incidental to the very work the contractor was hired to perform. A *179 landowner is under no duty to protect an employee of an independent contractor from the very hazard created by the doing of the contract work. This exception to the landowner’s general duty exists because [t]he landowner may assume that the worker, or his superiors, are possessed of sufficient skill to recognize the degree of danger involved and to adjust their methods of work accordingly.
Johnson, 985 So.2d at 596-97 (citations omitted) (internal quotation marks omitted).
The instant case presents the exact situation contemplated by the exception. Morales was hired to perform a dangerous demolition job on a heavily-damaged structure. He was injured by one of the incidental hazards which made the job dangerous. Moreover, the dangerous condition of the roof was patently obvious to all. The Weils were in no better position than Morales to assess the level of danger that the job posed. Consequently, the Weils owed him no duty to maintain the roof in a reasonably safe condition. See Johnson, 985 So.2d at 596-97; see also Fla. Power & Light Co. v. Price, 170 So.2d 293, 298 (Fla.1964) (“The independent contractor is usually placed in charge of the work site and is responsible for all incidental contingencies and is aware or presumed to be aware of the usual hazards incident to the performance of his contract.”).
In short, we hold that there is no theory of negligence which makes the Weils liable to Morales for his injuries. We therefore affirm.

Affirmed.

STEVENSON and LEVINE, JJ„ concur.

. The Weils and Garrett vehemently denied that there was ever an agreement for Garrett to demolish the old bam. However, we must view the facts in the light most favorable to the non-moving party, Morales. See Turner v. PCR, Inc., 754 So.2d 683, 684 (Fla.2000); Meruelo v. Mark Andrew of Palm Beaches, Ltd., 12 So.3d 247, 250 (Fla. 4th DCA 2009) (citing Dep’t of Children & Family Servs. v. Amora, 944 So.2d 431, 435 (Fla. 4th DCA 2006)).